UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETH HAGER,

        Plaintiff,

v.

CROWNING POINT SOLUTIONS, LLC,
SUMMIT RECOVERY GROUP, LLC,
JEMARR JERIKO MOODY,
JVK CONSULTANT GROUP LLC and
JAMES ALLEN TRUEBLOOD JR.,

        Defendants.
_____/

<u>COMPLAINT</u>

**I.**    **Introduction**

1.    This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Regulation

of Collection Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational

Code ("MOC") M.C.L. § 339.901 *et seq.*

2.    Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent and ongoing scheme whereby they have conspired to use false

representations and threats to coerce the payment of money from consumers across the country

who allegedly have failed to repay payday loans.  This scheme, operated by defendants as well as

many other entities located in and around Buffalo, New York, Atlanta, Georgia and Charlotte,

North Carolina, is based on the use of a script, sometimes known as "The Shakedown" or "The

Shake," that includes variations of the following:  The caller calls from a blocked number or uses a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer. The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm).  Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response.  When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt.  Of course, no lawsuit has been filed.  Often times the debt is time-barred. Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account.  Often times, the loan has been repaid and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.      The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122,

by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt

collection entities defendants.  See also the complaint filed by the United States of America

against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New

York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located

in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and

violated the FDCPA and other laws, through a payday loan collection scheme that is

indistinguishable from the ongoing scheme being perpetrated by the defendants a alleged in this

complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the

Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of

virtually every state, and the Better Business Bureau all have issued press releases that warn

consumers about this ongoing scam.

4.      On November 4, 2015, the Federal Trade Commission and other law enforcement

authorities around the country announced the first coordinated federal-state enforcement

initiative targeting deceptive and abusive debt collection practices. The "Operation Collection

Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and

local law enforcement authorities against collectors who use illegal tactics such as harassing

phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets

debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do

not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

5.      Even more recently, the federal government has begun to criminally indict

individuals involved in the type of scam that is described in this complaint. See, for example, the

forty-one count indictment filed on March 3, 2016 by the United States of America against Alan

Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft.

## II.    Jurisdiction

6.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the events took place here.

## III.    Parties

7.      Plaintiff Beth Hager is an adult, natural person residing in Kent County, Michigan.  Ms. Hager is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Ms. Hager is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

8.      Defendant Crowning Point Solutions, LLC ("CPS"), also doing business under the unregistered name "The CPS Group," is an active New York limited liability company. CPS claims to be doing business at 266 Elmwood Avenue, Buffalo, New York 14222-2202, but the address is merely a private mailbox rented by defendants from an entity named RZ Shipping Inc., doing business as The UPS Store #0861. CPS actually does business at 392 Pearl Street, Suite 401, Buffalo, New York 14202-2210. The registered agent for CPS is United States Corporation Agents, Inc., 7014 13th Avenue, Suite 202, Brooklyn, New York 11228. CPS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. CPS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. CPS is a "debt collector" as the term is defined and used in the FDCPA. CPS is a "regulated person" as the term is defined and used in MRCPA.  Alternatively,

CPS is a "collection agency" and "licensee" as the terms are defined and used in MOC.

9.      CPS is licensed (No. 10029847) as a Collection Agency by the City of Buffalo, New York, current through September 30, 2018. The contact telephone number provided by CPS to the City of Buffalo, New York is 716-253-8091, which is the personal cellular telephone number registered to defendant Jemarr Jeriko Moody. The Collection Agency Application filed by Mr. Moody with the City of Buffalo states lists the principal place of business for CPS as 461 Ellicott Street, Buffalo, New York 14203. The application also states that Mr. Moody previously was employed by Bluestein, Hirsh & Associates, LLC and RJA Capital, Inc. CPS has provided the City of Buffalo with a Collection Agency Bond (No. 71576467), effective September 1, 2014, and issued by Western Surety Company in the amount of $5,000.00.

10.     CPS maintains an internet domain name (www.crownpointsolutions.com) that was registered on August 20, 2014. The domain name was registered by defendant Jemarr Moody, 413 Eggert Road, Buffalo, New York 14215, telephone number 716-253-8091, email jemarrmoody@ymail.com. The related CPS website states: "CPS LLC is a full service, licensed collections, accounts receivable, and portfolio management firm. . . . CPS LLC has captured some of the best talent in the industry as we refuse to accept second rate performance." The CPS website provides a telephone number of 884-806-5093, a fax number of 716-240-9810, and an email address of admin@crowingpointsolutions.com. Other email addresses used by CPS and Mr. Moody include admin@cps-llc.com and compliance@cps-llc.com. On April 11, 2016, Mr. Moody registered another internet domain name, www.paybilltree.com.

11.     Other telephone numbers used by CPS to collect debts include: 844-621-8268, 844-814-1810 and 855-764-8902.

12.     On September 19, 2016, CPS filed documents with the State of Ohio to become

registered to do business in Ohio as a foreign limited liability company, and stating that CPS intends to do business at 3110 Whipple Avenue, NW Canton, Ohio 44718. The documents were filed by defendant Jemarr Jeriko Moody, with an address of 135 Willowlawn Parkway, Buffalo, New York 14206-3421. The registered agent for CPS in Ohio is Jemarr Moody, 3110 Whipple Avenue, NW Canton, Ohio 44718.

13.     CPS directly and indirectly participated in the efforts to collect an alleged debt from Ms. Hager that are described in this complaint.

14.     Defendant Summit Recovery Group, LLC ("SRG") is an active New York limited liability company. SRG claims to be doing business at 100 Commonwealth Avenue, Buffalo, New York 14216-2720. The registered agent for SRG is United States Corporation Agents, Inc., 7014 13th Avenue, Suite 202, Brooklyn, New York 11228. SRG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. SRG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. SRG is a "debt collector" as the term is defined and used in the FDCPA. SRG is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, SRG is a "collection agency" and "licensee" as the terms are defined and used in MOC.

15.     SRG directly and indirectly participated in the efforts to collect an alleged debt from Ms. Hager that are described in this complaint.

16.     Defendant Jemarr Jeriko Moody is a natural person, age 25, purportedly residing at 135 Willowlawn Parkway, Buffalo, New York 14206-3421. Mr. Moody is an owner, officer, manager, employee and agent of defendants CPS and SRG. Mr. Moody uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Moody regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

owed or due another. Mr. Moody is a "debt collector" as the term is defined and used in the FDCPA. Mr. Moody is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Moody is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

17.     Mr. Moody (a) created the collection policies and procedures used by defendants CPS and SRG and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of CPS and SRG, (c) oversaw the application of the collection policies and procedures used by CPS and SRG and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by CPS and SRG and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Hager as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by CPS and SRG and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by CPS and SRG and their employees and agents in attempts to collect an alleged debt from Ms. Hager as stated in this complaint.

18.     Mr. Moody directly and indirectly participated in the efforts to collect an alleged debt from Ms. Hager that are described in this complaint.

19.     On November 30, 2015, Mr. Moody filed an assumed named certificate with Erie County, New York, giving notice that Mr. Moody intended to do business as Crowning Processing Solutions, 392 Pearl Street, Suite 401, Buffalo, New York 14202-2210.

20.     On November 30, 2015, Mr. Moody filed an assumed named certificate with Erie County, New York, giving notice that Mr. Moody intended to do business as Account Processing

Management, 100 Commonwealth Avenue, Buffalo, New York 14216-2720.

21.     In May of 2016, Mr. Moody posted an advertisement on the internet website,

www.craiglist.org, seeking a "debt collection manager" for a "brand new office in fort lauderdale

[Florida] for debt collections." Mr. Moody's advertisement stated "We are looking for BEAST

on the phone that knows what it takes to make a unlimited bonus." (Caps in original.) The

advertisement instructed applicants to call Mr. Moody at 716-253-8091 to set up an interview.

22.     Mr. Moody posted an advertisement on the internet at www.rofo.com, stating that

he was searching for 4,000 to 6,000 square feet of office space for in Buffalo, New York to be

used as a call center to accommodate 21-30 employees.

23.     On August 11, 2016, a non-party entity named Summit Recovery Group LLC,

1620 NE 56th Court, Fort Lauderdale, Florida 33334 was registered with the State of Florida. The

entity is managed by Gregory R. Gibson, 1620 NE 56th Court, Fort Lauderdale, Florida 33334

and Stefanie Vasturo, 11800 NW 27th Street, Plantation, Florida 33323. It will need to be

determined in discovery whether the entity is owned or operated by, or related to, any of the

defendants named in this lawsuit.

24.     Defendant JVK Consultant Group LLC ("JVK") is an active Georgia limited

liability company, purportedly operating at 125 Town Park Drive, Suite 300, Kennesaw, Georgia

30144. The registered agent for JVK is defendant James Allen Trueblood, Jr., 125 Town Park

Drive, Suite 300, Kennesaw, Georgia 30144. JVK uses interstate commerce and the mails in a

business the principal purpose of which is the collection of debts. JVK regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another. JVK is a "debt collector" as the term is defined and used in the FDCPA. JVK is a

"regulated person" as the term is defined and used in MRCPA. Alternatively, JVK is a

"collection agency" and "licensee" as the terms are defined and used in MOC.

25. JVK maintains an internet domain name (www.jvkconsultantsgroup.com) that

was registered on July 28, 2015. The domain name was registered by defendant James Allen

Trueblood, Jr. The related JVK website states: "We offer a range of debt portfolios for agencies,

and investors, all designed to help your company reach its potential." The JVK website lists a

telephone number of 888-715-0030. JVK also sells portfolios of delinquent consumer debt on

www.facebook.com (https://www.facebook.com/search/top/?q=JVK%20Consultants%20Group).

26. JVK directly and indirectly participated in the efforts to collect an alleged debt

from Ms. Hager that are described in this complaint.

27. Defendant James Allen Trueblood Jr. is a natural person, purportedly residing at

4371 Mikandy Drive NW, Kennesaw, Georgia 30144-1397. Mr. Trueblood is an owner, officer,

manager, employee and agent of defendant JVK. Mr. Trueblood uses interstate commerce and

the mails in a business the principal purpose of which is the collection of debts. Mr. Trueblood

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

owed or due another. Mr. Trueblood is a "debt collector" as the term is defined and used in the

FDCPA. Mr. Trueblood is a "regulated person" as the term is defined and used in the MRCPA.

Alternatively, Mr. Trueblood is a "collection agency" and "licensee" as the terms are defined

and used in the MOC.

28. Mr. Trueblood (a) created the collection policies and procedures used by

defendants JVK and CPS and their employees and agents, in connection with their common

efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection

operations of JVK, (c) oversaw the application of the collection policies and procedures used by JVK and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by JVK and CPS and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Hager as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by JVK and CPS and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by JVK and CPS and their employees and agents in attempts to collect an alleged debt from Ms. Hager as stated in this complaint.

29.     Mr. Trueblood directly and indirectly participated in the efforts to collect an alleged debt from Ms. Hager that are described in this complaint.

30.     When Mr. Trueblood registered the JVK domain name, he provided a registrant's email address of service@markanestorpc.com. The domain name www.markanestorpc.com belonged to an attorney named Mark Anderst Nestor, with a business address of 3690 Holcomb Bridge Road, Suite 200, Norcross, Georgia 30092. Mr. Nestor owned and/or operated multiple entities involved in the collection of delinquent consumer accounts, including Southeast Collection Specialists, LLC, Nestor Georgia 1, LLC, Hillview Norcross 1, LLC, and TLY Capital, LLC. According to information posted on the internet, Mr. Nestor's company, Southeast Collection Specialists, LLC, was operated by Mr. Trueblood from office space shared with Mr. Nestor's law office. The Better Business Bureau for Atlanta, Georgia has posted on its internet website, multiple complaints filed by consumers against Mr. Nestor's company and describing the same sort of unlawful debt collection tactics that are described in this complaint.

31.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

32.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.   Facts

33.     On or about January 11, 2009, plaintiff Beth Hager obtained a Visa credit card (4447962165707278) through Credit One Bank. Ms. Hager used the account to purchase on

credit, goods or services for personal, family and household purposes.  Any resulting obligation of Ms. Hager to pay money to Credit One Bank was a "debt" as the term is defined and/or used in the FDCPA, MRCPA and MOC.

34.    Ms. Hager allegedly failed to repay her debt to Credit One Bank and the account became delinquent. Credit One Bank charged off the delinquent account and related alleged debt.

35.    Credit One Bank sold the charged-off account and related alleged debt to Diverse Funding Associates LLC ("DFA"), an active Delaware limited liability company, purportedly doing business at 352 Sonwil Drive, Cheektowaga, New York 14225

36.    On or about June 10, 2016, DFA sold the account to Legal Portfolio Asset Management LLC ("LPAM"), an active Georgia limited liability company, purportedly doing business at 37 Stoney Court, Dawsonville, Georgia 30534.

37.    LPAM is owned and managed by Kevin Joseph Luebke. On May 11, 2012, the United States Department of Justice and the Federal Trade Commission filed a complaint against Mr. Luebke and others in the United States District Court for the Central District of Illinois, Peoria Division, Case No. 1:12-cv-1145, alleging that Mr. Luebke and the other defendants were operating a debt collection scam that  violated the FDCPA and other laws and defrauded hundreds of thousands of consumers. Essentially, the defendants would extort the payment of money from consumers by telephoning consumers, falsely claim to be a law firm, and falsely threaten litigation and garnishment of wages. On May 22, 2012, a Stipulated Final Judgment and Order for Permanent Injunction was entered against Mr. Luebke and the other defendants, with a civil penalty of $2,340,000, which was suspended. The Order also enjoins Mr. Luebke from committing numerous acts that violate the FDCPA, including falsely representing that he is an

attorney or that a communication is from an attorney, and falsely representing that nonpayment of a debt will result in the arrest or imprisonment of a person or seizure, garnishment, attachment or sale of a person's property or wages.  The Order applies to anyone acting in concert with Mr. Luebke. The Order requires Mr. Luebke and anyone acting in concert with Mr. Luebke to provide consumers with a special notice of the consumer's rights. The Order also contains a section on Compliance Reporting and requires Mr. Luebke for a period of five years to provide annual reports as well as to notify the FTC of any changes in his status regarding any business entity that he directly or indirectly controls, or has an ownership in, that may affect compliance obligations under the Order. It will need to be determined in discovery what interest, if any, Mr. Luebke has in any of the corporate defendants named in this complaint.

38. On or about June 10, 2016, LPAM sold the account to defendant JVK Consultant Group LLC.  Alternatively, LPAM placed the account for collection with JVK, with LPAM retaining an interest in the account.

39. On or about June 10, 2016, JVK placed the account for collection with defendant Crowing Point Solutions, LLC.

40. On June 20, 2016, CPS placed a call to Ms. Hager's cellular telephone and a female CPS employee and agent left the following scripted message on Ms. Hager's voice mail: This message is being left in accordance with federal law. Due to the sensitive nature of this call, I am unable to discuss any further information at this time. You or your attorney can feel free to contact our office at 855-764-8902. We need to get your side of the story before I make any further decision. So once again, I can be reached at 855-764-8902. Please refer to Case Number 180040.

41.     On June 21, 2016, Ms. Hager spoke by telephone with CPS and its female employee and agent at 855-764-8902. Ms. Hager stated that she had received a message on her voice mail, instructing her to make a return telephone call 855-764-8901 regarding "Case Number 180040." In the ensuing conversation, the CPS employee and agent made the following statements to Ms. Hager:

a)      This is the CP Group.

b)      We're calling in reference to a court case.

c)      This is an attorney's office.

d)      This is a matter currently pending in Kent County, Michigan.

e)      We represent Capital One Bank. You had a contract with them back in 2009.

f)      There is a breach of consequence [sic] filed against you and the client. Before this matter is made public record to be pursued to the fullest extent, so that under state law this is our business to act between you Credit One Bank.

g)      Unfortunately, because of the lack of communication and breach of contract, they are looking to pursue the issue. It's just our obligation to contact you to see if we can try to cease and desist legal service of process and avoid legal proceedings by resolving this matter voluntarily. If not, unfortunately the account will be deemed uncollectible and pursued to the fullest extent permitted under state law.

14

h)      The account balance is $935.29.

i)      They are offering you an out of court settlement which will release you and your social security number for the original charge-off amount of $556.23.

j)      We can only put your account on hold until 3:00 p.m. Eastern Standard Time tomorrow.

42.     On June 21, 2016, Ms. Hager spoke a second time by telephone with CPS and its female employee and agent at 855-764-8902. Ms. Hager stated that she did not intend to pay money to CPS because she did not believe she owed the debt and the account was too old. The CPS employee and agent responded: The statute of limitation is seven years from the charge-off date so we'll see you in court. The CPS employee and agent then abruptly terminated the call.

43.     On June 21, 2016, Ms. Hager spoke a third time by telephone with CPS and its female employee and agent at 855-764-8902. Ms. Hager stated that the CPS employee had abruptly terminated the prior telephone call and Ms. Hager asked whether she was going to be sued. In the ensuing conversation, the CPS employee and agent made the following statements:

a)      The account was charged off in 2011.  We have until 2018 to take you to court.

b)      You will be placed on a list to receive documentation for a Notice of Intent to Appear so when they come to your house and serve you with those documents just be sure you are available with two valid forms of identification for service purposes.

15

44.     On June 23, 2016, Ms. Hager's representative placed a telephone call to 716-253-8091 which is the telephone number used by Mr. Moody to register the CPS internet domain name and to advertise on www.craigslist.org that he was hiring debt collectors to work as his new collection agency opening in Fort Lauderdale, Florida.  The call was answered by defendant Jemarr Jeriko Moody. In the ensuing conversation, Mr. Moody made the following statements:

      a)      CPS was attempting to collect money owed by Ms. Hager on a Credit One Bank account.

      b)      Ms. Hager owed $656.23.

      c)      JVK placed the account for collection with CPS in early June of 2016.

      d)      The telephone numbers used by CPS included 844-806-5093, 844-814-1810 and 716-240-9810 (fax).

      e)      716-253-8091 was Mr. Moody's personal cell phone number.

45.     On June 23, 2016, Ms. Hager's representative placed a telephone call to JVK at 888-715-0030. The call was answered by defendant James Allen Trueblood Jr. In the ensuing conversation, Mr. Trueblood made the following statements:

      a)      JVK was the owner of an unpaid debt originally owed by Ms. Hager to Credit One Bank, original account number 4447962165707278.

      b)      JVK acquired the account on June 10, 2015 from Legal Portfolio Asset Management, LLC, telephone number 678-729-7481.

      c)      JVK placed the account for collection with CPS in early June of 2016.

d)    Ms. Hager should pay JVK directly, by a check or money order made

payable to JVK and mailed to 125 Town Park Drive, Suite 300,

Kennesaw, Georgia 30144, or by a direct deposit into JVK's account at

Regions Bank, Account Number ******4630.

46.    On June 23, 2016, Ms. Hager's representative placed a telephone call to LPAM at

678-729-7481. The call was answered by a LPAM employee and agent named Tiffany. In the

ensuing conversation, the LPAM employee and agent stated that LPAM had obtained Ms.

Hager's account on June 10, 2016 from an entity named Diverse Funding Associates LLC, an

active Delaware limited liability company, and transferred the account that same day to JVK.

47.    The above-described threats and representations made by defendants' employees

and agents were false and part of a scripted and unlawful debt collection practice that is ongoing

and is currently being perpetrated by defendants to coerce the payment of money from thousands

of consumers across the country through the use of false threats, intimidation, extortion and

unlawful harassment of the consumers, their relatives and other third parties.

48.    Defendants and their employees and agents failed to meaningfully identify

themselves and their companies.

49.    Defendants and their employees and agents falsely represented the amount of Ms.

Hager's alleged debt.

50.    Defendants and their employees and agents falsely represented and falsely implied

that defendants are lawyers.

51.    Defendants and their employees and agents falsely represented and falsely implied

17

that defendants are part of a law firm.

52.     Defendants and their employees and agents falsely represented and falsely implied that defendants have a legal department.

53.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

54.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

55.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Ms. Hager to collect the alleged debt.

56.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Ms. Hager to collect the alleged debt.

57.     Defendants and their employees and agents falsely represented and falsely implied that defendants represent Credit One Bank.

58.     Defendants and their employees and agents falsely represented and falsely implied that the Michigan statute of limitation for filing suit against Ms. Hager to collect on the alleged was a period of seven years from the date that Credit One Bank charged off the account.

59.     Defendants and their employees and agents falsely represented and falsely implied that someone would be coming to Ms. Hager's residence to serve Ms. Hager with a lawsuit and that Ms. Hager was required to make herself available and present the process server with two valid forms of identification.

60.     Defendants did not intend to file a lawsuit against Ms. Hager in any Michigan court in efforts to collect the alleged debt.  In fact, no defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

61.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

62.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

63.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

64.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

65.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

66.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

67.     The FDCPA states that it is unlawful for a debt collector to falsely represent or

imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

68.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

69.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

70.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

71.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

72.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

73.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt

collector.  15 U.S.C. § 1692e(11).

74.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

75.    The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

76.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

77.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

78.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

79.    Defendants and their employees and agents failed to timely send to Ms. Hager a notice containing the information required by 15 U.S.C. § 1692g(a).

80.    Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

81.    Defendants and their employees, managers, owners, agents, affiliates and co-

conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

82.     JVK was aware of the unlawful debt collection practices being used by its agents, CPS and the CPS employees.

83.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

84.     Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

85.     As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

**V.     Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

86.     Plaintiff incorporates the foregoing paragraphs by reference.

87.     Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)     Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)     Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)     Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)     Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)     Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)     Such further relief as the court deems just and proper.

### Count 2 – Michigan Regulation of Collection Practices Act

88.     Plaintiff incorporates the foregoing paragraphs by reference.

89.     Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)     Statutory damages pursuant to M.C.L. § 445.257(2);

d)     Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)     Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 3 – Michigan Occupational Code

90.     Plaintiff incorporates the foregoing paragraphs by reference.

91.     Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)     Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)     Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)     Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)     Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)     Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: January 4, 2017                    /s/ Phillip C. Rogers
                                          Phillip C. Rogers (P34356)
                                          Kevin J. Rogers (P81303)
                                          Attorneys for Plaintiff
                                          6140 28th Street, S.E., Suite 115
                                          Grand Rapids, Michigan 49546-6938
                                          (616) 776-1176
                                          ConsumerLawyer@aol.com